IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | 4:19-CR-3125 |
| vs. | | TENTATIVE FINDINGS |
| DEREK MILLER, | | |
| Defendant. | | |

The Court has received the revised presentence investigation report and addendum in this case. The defendant has filed an objection to the presentence report (filing 82) and moved for a downward departure or variance (filing 79).

IT IS ORDERED:

1.  The Court will consult and follow the Federal Sentencing Guidelines to the extent permitted and required by *United States v. Booker*, 543 U.S. 220 (2005) and subsequent cases. In this regard, the Court gives notice that, unless otherwise ordered, it will:

    (a)  give the advisory Guidelines respectful consideration within the context of each individual case and will filter the Guidelines' advice through the 18 U.S.C. § 3553(a) factors, but will not afford the Guidelines any particular or "substantial" weight;

    (b)  resolve all factual disputes relevant to sentencing by the greater weight of the evidence and without the aid of a jury;

(c)     impose upon the United States the burden of proof on all Guidelines enhancements;

(d)     impose upon the defendant the burden of proof on all Guidelines mitigators;

(e)     depart from the advisory Guidelines, if appropriate, using pre-*Booker* departure theory; and

(f)     in cases where a departure using pre-*Booker* departure theory is not warranted, deviate or vary from the Guidelines when there is a principled reason justifying a sentence different than that called for by application of the advisory Guidelines, again without affording the Guidelines any particular or "substantial" weight.

2.     **Motion for variance:** The defendant has moved for a downward departure or variance, based on his personal history and characteristics. *See* filing 85. Although the defendant cites U.S.S.G. §§ 5H1.1 to 1.4 as support for that request, it appears to the Court that the circumstances the defendant relies on are best considered in the context of a potential variance.[1] Accordingly, the Court will construe the defendant's motion as requesting a downward variance, and will resolve it at sentencing.

**Objections to presentence report:** The defendant has also objected to the presentence report. Filing 82. The defendant pled guilty to one count of making false statements in a Social Security Work Activity Report in

---

[1] The term "departure" is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines. As opposed to a "departure," a "variance" refers to a non-Guidelines sentence based on the factors enumerated in § 3553(a). *United States v. Lozoya*, 623 F.3d 624, 625-26 (8th Cir. 2010).

violation of 18 U.S.C. § 1001(a)(2). *See* filing 5; filing 66 at 1. The factual basis for that plea is the defendant's admission that, while receiving Supplemental Security Income (SSI), Medicaid, and SNAP benefits, he materially misrepresented his income. *See* filing 66 at 2.

The defendant objects to several paragraphs of the presentence report that, taken together, suggest that he misrepresented the extent and severity of his disability (if any). Filing 82 at 1-2. The defendant also objects to the presentence report's statement that the defendant had his minor son assist him in defrauding the government by (1) "assisting" him when he appeared to be physically impaired during a doctor's visit and (2) completing documents on his behalf which, according to the presentence report, "supported and perpetuated his father's false statements to the [Social Security Administration]." *See* filing 82 at 2.

**Use of a minor to commit a crime:** The latter facts are relevant to the assessed 2-level enhancement to the offense level pursuant to U.S.S.G. § 3B1.4 for using a minor to commit a crime. This enhancement requires more than mere joint participation in a crime with a minor: rather, it applies where a defendant acted affirmatively to involve a minor in the offense of conviction. *United States v. Roberts*, 958 F.3d 675, 677 (8th Cir. 2020); *see United States v. Fisher*, 861 F.3d 802, 804 (8th Cir. 2017). So, for instance, in *United States v. Williams*, the enhancement was properly applied where a defendant convicted of making a threatening telephone call had directed a minor to dial and hang up the telephone. 590 F.3d 616, 618-19 (8th Cir. 2010). On the other hand, the enhancement was not applicable in *Fisher*, despite a minor's assistance throughout a multi-state crime spree, because there was no evidence she was directly involved in

the specific bank robbery that was the offense of conviction. 861 F.3d at 804-05.

Whether the enhancement applies here depends on which facts are considered. While the defendant's alleged malingering might be at issue in other ways, it's not the offense of conviction: the defendant's been convicted of misrepresenting his income, not his disability. So, whether § 3B1.4 applies depends on whether the defendant's son completed SSA paperwork for him and, if so, whether the paperwork he completed and the manner in which he completed it "involved" him in the crime. That, the Court can't tell from the brief description in the presentence report. And in any event, it's the government's burden to prove the applicability of an enhancement to the offense level when the defendant objects. *See United States v. Poor Bear*, 359 F.3d 1038, 1041 (8th Cir. 2004). Accordingly, the Court will resolve this objection at sentencing.

**Loss calculation and restitution:** The primary issue disputed by the parties, however, is the loss calculation and restitution. The government has the burden to prove actual loss,[2] for fraud purposes, by the preponderance of the evidence. *United States v. Markert*, 774 F.3d 922, 925 (8th Cir. 2014). But because the damage wrought by fraud is sometimes difficult to calculate, the Court need only reasonably estimate the loss. *United States v. Martinez*, 690 F.3d 1083, 1086-87 (8th Cir. 2012). Similarly, the government must prove restitution is warranted by a

---

[2] The Eighth Circuit has held in this context that *intended* loss that would have resulted from continued receipt of benefits until retirement may be used for loss calculation pursuant to § 2B1.1. *See United States v. Killen*, 761 F.3d 945, 949 (8th Cir. 2014); *United States v. Frisch,* 704 F.3d 541 (8th Cir.2013). But the government isn't pursuing that theory. *See* filing 97.

preponderance of the evidence, by showing the actual, provable loss. 18 U.S.C. § 3664(e); *United States v. Martinez*, 690 F.3d 1083, 1088 (8th Cir. 2012). Restitution is compensatory, not punitive, and in a fraud case, it is limited to the actual loss directly caused by the defendant's criminal conduct in the course of the scheme alleged in the indictment. *United States v. Chaika*, 695 F.3d 741, 748 (8th Cir. 2012).[3]

The parties' arguments on these matters have shifted somewhat over multiple rounds of briefing. The presentence report, adopting the government's version of the offense based on the evidence, found that the defendant had fraudulently received $301,391.11 in Medicaid benefits, $81,568 in SSI payments, and $5,038 in SNAP benefits, for a total loss amount of $387,997.11. The defendant's initial position was simply that while he had underreported his income, he might still have qualified for some of the benefits he received, and it shouldn't be assumed that all of his benefits were undeserved. Filing 85 at 9-10.

The government's initial position was that the defendant had not only underreported his income, but was also never actually disabled—so all of his SSI and Medicaid benefits were fraudulently obtained. *See* filing 75 at

---

[3] Although the gross amounts of loss for sentencing purposes pursuant to U.S.S.G. § 2B1.1(b) and loss for restitution purposes are often calculated in the same manner, the two determinations serve different purposes and may differ depending on the relevant facts. *United States v. Lange*, 592 F.3d 902, 907 (8th Cir. 2010). In this case, however, the parties have agreed that restitution may be awarded for loss or harm directly and proximately caused not only by the offense of conviction, but the defendant's relevant conduct, including the other counts of the operative superseding indictment. *See* filing 66 at 4; 18 U.S.C. § 3663(a)(3). Given that, it doesn't appear to the Court at this point that the loss calculation and restitution amounts are likely to differ.

2-13.[4] But that argument was largely premised on the SSA's determination that the defendant wasn't disabled, *see* filing 75 at 4-9, and the Court has since been informed that the SSA has reopened that determination. *See* filing 97 at 1 n.1.

As a result, the government's position has shifted to the defendant's income, not whether he was actually disabled.[5] The government has provided evidence suggesting that the defendant's income, based on the limited financial records available, exceeded permitted amounts regardless of whether the defendant was actually disabled. *See* filing 97. The defendant insists that the casino records on which the government relies are insufficient to prove unreported income in amounts that would have disqualified him for benefits. *See* filing 102; filing 107.

As the Court understands the case, then, the issue to be decided at the sentencing hearing is whether the government can prove, by a preponderance of the evidence, whether (and when) the defendant's actual income during the period in question exceeded the limits for the benefits

---

[4] The SNAP losses seem to be strictly based on underreported income. *See* filing 75 at 12-13; filing 76-9.

[5] And wisely so: this Court is neither equipped nor inclined to determine in the first instance whether, and to what extent, the defendant was actually disabled between 2009 and 2019. Were that the only way in which to determine restitution, the Court would likely find that "the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution . . . outweighs the need to provide restitution to any victims" and "decline to make such an order." *See* § 3663(a)(1)(B)(ii). And depending on how far into the weeds the parties want to get with respect to the defendant's unreported income, the Court still might. *See Martinez*, 690 F.3d at 1089. (Particularly given that the government agencies at issue are entirely capable, on their own, of recovering overpayments from this defendant.)

he received. With that understanding, the Court will resolve this objection at sentencing.

3.  Except to the extent, if any, that the Court has sustained an objection, granted a motion, or reserved an issue for later resolution in the preceding paragraph, the parties are notified that the Court's tentative findings are that the presentence report is correct in all respects.

4.  If any party wishes to challenge these tentative findings, that party shall, as soon as possible (but in any event no later than three (3) business days before sentencing) file with the Court and serve upon opposing counsel an objection challenging these tentative findings, supported by a brief as to the law and such evidentiary materials as are required, giving due regard to the local rules of practice governing the submission of evidentiary materials. If an evidentiary hearing is requested, such filings should include a statement describing why a hearing is necessary and how long such a hearing would take.

5.  Absent timely submission of the information required by the preceding paragraph, the Court's tentative findings may become final and the presentence report may be relied upon by the Court without more.

6.  Unless otherwise ordered, any objection challenging these tentative findings shall be resolved at sentencing.

Dated this 23rd day of November, 2021.

BY THE COURT:

John M. Gerrard
United States District Judge