IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:19-CR-3125 |
| vs. | SENTENCING FINDINGS |
| DEREK MILLER, | |
| Defendant. | |

This matter is before the Court for calculation of loss calculation and restitution,[1] based on the evidence adduced by the parties at the sentencing hearing begun on January 28, 2022. *See* filing 127. As the Court previously stated the issue, it is whether the government proved, by a preponderance of the

---

[1] The parties also disagree about the applicability of the 2-level enhancement to the offense level pursuant to U.S.S.G. § 3B1.4 for using a minor to commit a crime. *See* filing 130 at 9-11; filing 131 at 1-2. The Court previously indicated that it was unable to resolve that issue from the brief description of the minor's activities in the presentence report. Filing 109 at 4. Now, the defendant asserts that the government didn't present any evidence to support this enhancement, filing 131 at 2, and the government points to several instances in the exhibits where the defendant's son participated in his disability claims, filing 130 at 10.

The Court remains unpersuaded, however, that the evidence shows the defendant's son participated in the *offense of conviction*—false statements on work activity reports—as opposed to being involved in the defendant's overall scheming. Accordingly, the Court will sustain the defendant's objection on this point—but on a technicality. The reality, however, is that the defendant absolutely involved his son in defrauding the government, even if the evidence specific to the offense of conviction is missing. And the Court will consider that conduct in determining the sentence, even if a 2-level enhancement isn't part of the Guidelines calculation.

evidence, whether (and when) the defendant's actual income during the period in question exceeded the limits for the benefits he received. Filing 109 at 6-7.

The Court has also previously set forth the applicable legal principles. *See* filing 109. As the Court has previously noted, the government has the burden to prove actual loss, for fraud purposes, by the preponderance of the evidence. *United States v. Markert*, 774 F.3d 922, 925 (8th Cir. 2014). But because the damage wrought by fraud is sometimes difficult to calculate, the Court need only reasonably estimate the loss. *United States v. Martinez*, 690 F.3d 1083, 1086-87 (8th Cir. 2012). Similarly, the government must prove restitution is warranted by a preponderance of the evidence, by showing the actual, provable loss. 18 U.S.C. § 3664(e); *Martinez*, 690 F.3d at 1088. The Court recognizes that the two determinations serve different purposes and may differ depending on the relevant facts. *United States v. Lange*, 592 F.3d 902, 907 (8th Cir. 2010). In this case, however, it does not appear that there is a relevant distinction.

The government maintains, in accord with the presentence report, that the defendant fraudulently received $301,391.11 in Medicaid benefits, $81,568 in SSI payments, and $5,038 in SNAP benefits, for a total loss amount of $387,997.11. Filing 130 at 1. The government's argument hinges on the Court being persuaded from the defendant's gambling records that he had substantial unreported income. *See* filing 130 at 2-7. The Court is only persuaded in part.

Specifically, the Court is persuaded that the records from Ameristar for 2010, 2011, and 2012 are sufficiently reliable and specific to demonstrate that the defendant had unreported income for those years that would have disqualified him for government benefits. There was simply too much money going in and out of Ameristar linked to the defendant's account, in too many discrete transactions, for the defendant to explain it all away. *See* filing 112-1; filing 112-2; filing 112-3.

- 2 -

Not that he didn't try: the theory he proffers is that he was abusing the casino's rewards program, so it looked like he personally wagered more than he actually did. In other words, his defense seems to be that he wasn't defrauding the government—he was defrauding the casinos instead. That is, I suppose, more believable than a straight denial—the Court doesn't find it hard to believe that the defendant was trying to cheat the casinos too. But it still doesn't do wonders for the defendant's credibility, because the Court's assessment is that he has very little. The Court need not recount his obfuscation in detail, because he summed it up very well himself while testifying under oath: "I would say anything to make money." That, if nothing else, the Court believes without reservation.

Unfortunately for the government, the records from the Caesars Rewards program are far less comprehensive. *See* filing 112-4. While the Court has been presented with the losses associated with the defendant's rewards account, that doesn't tell the Court how much money went in and out to produce those losses, nor (unlike the Ameristar records) does it display the sheer number of transactions involved. And the Court notes that the betting patterns appear to have been different at Caesars, because they resulted in taxable jackpots that aren't present on the Ameristar records. It's not clear what that means with respect to the defendant, other than that it makes it hard to extrapolate much from the cursory bottom-line records from Caesars.

In sum, the Court finds that the government met its burden of proving over-threshold income in 2010, 2011, and 2012. From there, the math for the SSI benefits is clear: the defendant received a net of $24,552 in disability benefits during those calendar years. *See* filing 76-10. The other programs are more of a problem. The defendant's SNAP benefits fell outside that period entirely. *See* filing 76-9. And the Medicaid losses aren't broken out by time at

all, in Exhibit 16 or elsewhere, leaving the Court with no way to delimit them. *See* filing 76-11; filing 76-12. That leaves the Court with $24,552.[2] Accordingly,

IT IS ORDERED:

1. The defendant's objection (filing 82) is sustained in part and overruled in part.

2. The proven losses attributable to the defendant's conduct, for purposes of loss calculation and restitution, are $24,552.

Dated this 14th day of February, 2022.

BY THE COURT:

John M. Gerrard
United States District Judge

---

[2] That said, however: the Court's sentence will be based on 18 U.S.C. § 3553(a), and would have been the same regardless of its Guidelines calculation. The Court will reaffirm that at sentencing, but makes the point here to ensure that the record is absolutely clear. The defendant pleaded guilty to making false statements in his work activity report and it is more than apparent to the Court that he did so, repeatedly, in a deliberate effort to obtain government benefits to which he may not have been entitled. It is also apparent that the defendant involved his minor son in that effort. That *conduct* is what the Court is sentencing the defendant for, and the sentence would have been the same regardless of whether the government had shown that the defendant's son falsified a work activity report, or had carried its burden of proving the actual losses in all or none of the years at issue.